## EVERT v. KLEIMENHAGEN.

1. Where parties meet on Sunday, and talk over and substantially agree upon the terms of, a purchase and sale of a pair of horses, during which representations are made by the seller which would constitute a warranty of soundness, and then agree that they should meet again on the next day, when secured notes should be given for the purchase price, and the horses then transferred to the purchaser, which was done, the warranty took legal effect, as such, only when the trade was completed and the property in the horses passed to the purchaser, and was not void, as a Sunday contract.

2. Where there is some substantial evidence, which, with the inferences fairly deducible therefrom, would go to sustain the verdict of the jury, this court will not reverse an order denying a new trial, although the evidence, in its opinion, preponderates against such verdict.

(Syllabus by the Court. Opinion filed Nov. 19, 1894.)

Appeal from circuit court, Brown county. Hon D. Haney, Judge.

Action for breach of warranty on a sale of horses. Judgment was rendered for plaintiff, and defendant appeals. Affirmed.

The facts are stated in the opinion.

*George W. Jenkins,* for appellant.

A contract of sale made on Sunday is void. Nebert v. Bayhurst, 47 N. J. Eq. 201; Houchett v. Jordan, 45 N. W. 617; Finley v. Quirk, 9 Minn. 179; Day v. McAllester, 15 Gray 433. An action cannot be maintained on a warranty made on the sale of property on Sunday. Robertson v. French, 12 Met. 24; 5 Cush. 539; Ganson v. Gass, 107 Mass. 441; Bantelle v. Melindy, 19 N. H. 196.

*P. E. Taylor,* for respondent.

A contract of sale of personal property, even if made on Sunday was not void at common law. Mackalley's case, 9 Co. 66; Waite v. Hundred, Cro. Jac. 496; The King v. Brothertan, Stra. 702; Swain v. Broome, 3 Burr, 1595; Druvey v. Fontaine, 1 Taunt 131; The King v. Whitewash, 7 B. & C. 596; Begbie v. Sevey, 1 Tyrw 130; Stony v. Elliott, 8 Cow 27; Battsford v. Every, 44 Barb. 618; Geer v. Putman, 10 Mass. 312; Johnson v. Day, 17 Pick. 106; Kepner v. Keefer, 6 W. & S. 444; Adams v. Gay, 19 Vt. 365; Bloom v. Richards, 26 St. 387; Davis v. Barger, 57 Ind. 54; Tucker v. West, 29 Ark. 386. The statutes of South Dakota do not prohibit the making on Sunday of such a contract as the one sued upon in this action. Comp. Laws sec. 6241; Moore v. Murdock, 26 Cal. 514. A private sale of property not exposed to sale is not within the statutory prohibitions. Eberle v. Mehobach, 55 N. Y., 682; Boynton v. Page, 13 Wend, 425. The decision of the lower court on an application for a new trial upon the ground of the insufficiency of the evidence to support the verdict will only be reviewed by this court in case of manifest abuse of the discretion of the lower court. Hodges v. Bierlein, 4 S. D. 258; 56 N. W. 811. It was for the jury to say whether the sale was made on the faith of the alleged warranty. May v. Mortin, 21 Atl. 428. Also whether cribbing was a breach of the warranty. Moore v. Haviland, 17 Atl. 725.

KELLAM, J.    This action was brought by respondent, Evert, to recover damages from appellant, Kleimenhagen, for a breach of warranty in the sale of a pair of horses.    The case was tried before a jury.    The plaintiff recovered, and the defendant, after being denied a new trial, appealed.

Appellant had brought a car load of horses from Wisconsin into Brown county for the purpose of sale.    He arrived with them at the farm of a Mr. Zellers, in that county, July 14, 1888. The next day being Sunday, respondent, Evert, called upon appellant, at Zellars', and wanted to buy a pair of horses. After looking over the stock he selected a pair of gray mares, which he had hitched up, and drove a short distance.    After some talk, during which it is claimed the warranty was made, a price was agreed upon, and it was arranged that the parties should meet the next day at Hecla, when notes should be given by the respondent, secured by a chattel mortgage on the horses and other property.    This was done, the trade completed upon the terms agreed upon the day before, and the horses transferred to plaintiff.    These facts being shown, together with evidence tending to prove a warranty of the horses during the conversation of Sunday, the defendant moved for judgment on the plaintiff's evidence, on the ground that the warranty, if any is shown, was made on Sunday.    The court denied the motion, and its ruling is assigned as error.

We think it was right.    Whatever statements were made as to the condition or quality of the horses, they only became an operative warranty when the negotiations became a contract or trade.    Up to the meeting of the parties at Hecla, on Monday, the horses were still the property of Kleimenhagen. The warranty had no existance, separate from the contract of sale, but was dependent upon it.    Evert bought the warranty when he bought the horses, and it passed to him when the title to the horses passed.    On Monday they made their trade, upon the terms agreed upon on Sunday.    The case, in principle, seems analogous to that of a promissory note written and

signed on Sunday, but not delivered until the next day. Neither the contract to warrant nor the contract to pay is complete until it passes from the promisor to the promisee. If so done on a subsequent week day, the parties are held to have adopted what they have previously agreed to and done on Sunday. On that ground, such a contract has often been held enforceable, as against a Sunday statute. Bish. Cont. sec. 538; Lovejoy v. Whipple, 18 Vt. 379; King v. Fleming, 72 Ill. 21; Fritsch v. Heislen, 40 Mo. 556. Suppose that, during their Sunday negotiations, Kleimenhagen, to induce Evert to buy, had written out a warranty, and showed it to him, to be delivered to him in case of trade, and had delivered it to him the next day, when he turned over the horses. Would it have been a Sunday warranty and void? We think not. The representation, whether written or oral, would only become an operative warranty, in the hands of Evert, when and from the time it passed to him, and he took property in it, and that occurred at a time when it was legal to make it.

The question, of course, still is, what did the parties agree to on the week day? Upon what points did their minds meet in contract? While nothing may have been said on Monday, that, by itself, could be construed into a warranty, their conduct, as explained by the evidence, plainly said, each to the other, "We will make this trade today as we talked yesterday." No rule of evidence will exclude what the parties said Sunday, to explain what they did Monday. They then formally adopted and made operative what they had decided upon the day before. Grant v. McGrath (Conn.) 15 Atl. 370, cited by appellant, is not in point. There it was admitted by the pleadings that the sale and warranty were made and the property delivered to the purchaser on Sunday, the payment of the price only being deferred until the following day. The court puts its decision on the ground that the plaintiff admitted that the trade was "consummated" on Sunday, "with no intimation that the sale was made at any other time." In the case before us,

independently of the evidence as to the facts, the defendant specifically admits in his answer that the sale was made "on the 16th day of July," which would be Monday.

We have discussed this question on the theory that, if the contract of sale had been fully made and consummated on Sunday, it would have been invalid, and would have furnished no support for an action on the warranty. It is unnecessary to go further, and we express no opinion as to the legal effect of such a contract, if made and concluded on Sunday. We think the trial court was right in overruling defendant's motion for judgment on the grounds that the warranty was a Sunday contract and void. The views we have expressed upon this question sustain the correctness of the judge's charge to the jury as to the legal effect of the Sunday transaction.

This leaves only the question of the sufficiency of the evidence to support the verdict. It seems to us that the evidence preponderates against the verdict upon the question of warranty or no warranty, but that does not justify a reversal. The jury is the judge of the facts; and the court of the law. The testimony of Evert and his son was definite and positive, and though contradicted by several other witnesses, left the jury substantial ground upon which to base such verdict. There is also certainly some substantial evidence, which, with the inferences which the jury was at liberty to draw therefrom, would go to sustain the verdict as to the breach of the warranty that the horses were sound. The team was delivered to respondent during the midday of Monday. There was evidence tending to show that one of the horses was a "cribber." Lahman testified that he saw them tied to a post at Hecla soon after their delivery to Evert. One of them "was cribbing; cribbing very bad." Another witness, Colsteff, saw them about the same time. He says, "one of them was cribbing." Respondent and a neighbor drove them home that night, five or six miles. They say one of them seemed "wrong" while on the way home. She

sweat badly, and was bloated.    She died the next morning.
She was the alleged "cribber."    While there was no direct
evidence or expression of opinion as to the immediate cause of
the horses death, Evert says, when he went to the barn in the
morning, she "was sick, lying down, and rolling and kicking."
If the jury believed these statements, they might have drawn
the inference therefrom that the mare died of colic occasioned
by her "cribbing."    We could not say that such inference would
be unreasonable or unjustifiable.    We discover no ground upon
which to base a reversal of this judgment, and it is affirmed.
All the judges concur.